UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| CATHY LYNN GUESS, | ) | |
| | ) | Case No. 4:24-cv-30 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| THE TJX COMPANIES, INC. and | ) | |
| MARSHALL'S DEPARTMENT STORE, | ) | |
| | ) | |
| *Defendants*. | ) | |

# MEMORANDUM AND ORDER

Before the Court is Defendant The TJX Companies, Inc. d/b/a Marshall's Department Store's ("TJX") motion for summary judgment. (Doc. 26.) For the following reasons, the Court will **DENY** the motion.

## I. BACKGROUND

On February 27, 2023, Plaintiff Cathy Lynn Guess was shopping at a Marshall's Department Store owned by TJX. (Doc. 26-3, at 2–3.) Guess testified that, while walking through the store, she slipped on a white plastic coat hanger that was on the floor and did not have any merchandise on it. (*Id*. at 3–5.) According to Guess, (1) she did not see the hanger until she started to fall (*id*. at 6); (2) the store was not busy at the time she fell (*id*. at 7); (3) there was no one in the aisle where she fell at the time she fell (*id*. at 8); (4) she does not know how the coat hanger got on the floor or how long it had been on the floor (*id*. at 9–10); and (5) a store employee told her the hanger had been picked up after her fall (*id*. at 12). Brandy O'Brien, the store manager, and Jill Fischer were working at the store at the time Guess fell, and they testified

that neither they nor any other store employee found a coat hanger on the floor after Guess's fall. (Doc. 26-4, at 2–3; Doc. 26-5, at 3, 5.)  O'Brien, however, conceded that the coat hanger could have been picked up by another store employee patrolling the area. (Doc. 31-4, at 6.)  Finally, Fischer testified that it is store policy for employees to look for hazardous conditions and address any hazardous conditions immediately. (Doc. 26-5, at 3–4.)  Fisher filled out an incident report the day that Guess fell (Doc. 31-2, at 2–3), and, the following day, TJX filed a claim regarding Guess with its insurance carrier (*id*. at 4–5).

During discovery, Guess sought information from TJX regarding its surveillance system and whether there were video cameras at the store that would have captured her fall.  (*See* Doc. 31-1, at 1.)  Although TJX concedes that there were several operational video cameras in operation on the date of Guess's fall (*id*.; Doc. 31-4, at 5), TJX represents that there is no video covering the area where Guess fell (Doc. 31-1, at 1), and that video recordings from February 27, 2023, were "not available" (Doc. 31-2, at 1).  More specifically, TJX represents that there are three cameras that manually pan view and several fixed security cameras, and that the camera that covers the aisle where Guess fell was set to view another section of the store. (Doc. 31-1, at 1.)

Tabitha Bates, TJX's District Loss Prevention Manager, testified that TJX only preserves video recordings that show an actual accident happening, and she does not have any videos of Guess's fall. (Doc. 31-5, at 5–6.)  She further testified that surveillance videos are taped over after ninety days (*id*. at 5), and she did not know who made the decision to allow the surveillance videos from February 27, 2023, to be taped over (*id.* at 7).  According to Bates:

> If there's an accident, then I record or I block that video, and I export it, and I save it, and I send it [to the insurance company].  If there is no accident on the video, then I respond to them as to why I could not find any accident.  And if they need additional video of the person checking out or the person – other areas of the

store, they'll usually request that. There was no request for any of that, so it allowed the system to record over itself.

(*Id*. at 8.) Finally, Bates testified that e-mails relating to Guess's incident may have also been "purged out of our folders." (*Id*. at 6.)

Guess initiated the present action on February 23, 2024, asserting a negligence claim against TJX. (Doc. 1-1.) TJX removed the action to this Court of April 1, 2024 (Doc. 1), and filed a motion for summary judgment on March 21, 2025. (Doc. 26.) Guess opposes TJX's motion for summary judgment, primarily arguing that summary judgment is inappropriate based on TJX's spoliation of evidence. (*See* Doc. 31.) TJX's motion for summary judgment is ripe for the Court's review.

## II. ANALYSIS

Although TJX has filed a motion for summary judgment, Guess's response to TJX's motion effectively operates as a motion for spoliation sanctions on TJX based on its failure to preserve video surveillance recordings from the date of her fall. As a result, to resolve TJX's motion for summary judgment, the Court must first determine whether spoliation sanctions are appropriate based on TJX's failure to preserve electronically stored video surveillance recordings.

A court's authority to impose sanctions for the spoliation of electronically stored information comes from Federal Rule of Civil Procedure 37(e).

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Unlike the standard for destruction of physical evidence, Rule 37(e)(1) does not include an "intent" requirement. As a result, a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith to justify sanctions. *Yoe v. Crescent Sock Co.*, Case No. 1:15-cv-3, 2017 WL 5479932, at *8 (E.D. Tenn. Nov. 14, 2017). Sanctions under Rule 37(e)(2), however, require a finding that the party accused of destroying evidence "acted with the intent deprive another party of the information's use in the litigation." *Id.* (citation and internal quotations omitted). Under Rule 37(e)(2), "a showing of negligence or even gross negligence will not do the trick"; instead, an "intent to deprive" the other party of the evidence is required. *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016).

In determining whether sanctions for destruction of electronically stored information are appropriate, courts employ the following step-by-step analysis:

> First, was there a duty to preserve the data at issue? If not, the analysis ends. Second, were reasonable steps taken to avoid the loss of the data? If so, the analysis ends. Third, can the lost data be restored or replaced through additional discovery? If so, the analysis ends. Fourth, was the other party prejudiced by the loss of data? If not, the analysis ends, but if there was prejudice, the court can impose measures no greater than necessary to cure the prejudice. Such measures may include, allowing the injured party to comment on or introduce evidence about lost data at trial. If data were lost with the intent to deprive another party of the use of the lost data, prejudice is assumed and the court can allow a permissive or mandatory adverse inference or impose a case-terminating spoliation sanction.

*Yoe*, 2017 WL 5479932, at *9 (citation and internal quotations omitted). The advisory committee notes to Rule 37 further provide:

> The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did

> not lose the information may be unfair. In other situations, however, the content
> of the lost information may appear to be unimportant, or the abundance of
> preserved information may appear sufficient to meet the needs of all parties.
> Requiring the party seeking curative measures to prove prejudice may be
> reasonable in such situations. The rule leaves judges with discretion to determine
> how best to assess prejudice in particular cases.

Fed. R. Civ. P. 37(e) Advisory Committee's Note to 2015 Amendment. The party alleging spoliation has the burden of proof. *Yoe*, 2017 WL 5479932, at *9 (citing *Byrd v. Alpha Alliance Inc. Corp.*, 518 F. App'x. 380, 383–84 (6th Cir. 2013)).

"An obligation to preserve evidence exists when the party should have known that the evidence may be relevant to future litigation." *Id.* (citing *Beaven v. U. S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)). In this case, TJX's actions suggest that it reasonably anticipated potential litigation almost immediately after Guess's fall. A TJX employee filed an internal accident report the same day that Guess fell. (Doc. 31-2, at 2–3.) The next day, February 28, 2023, TJX reported the accident to its insurance carrier. (*Id.* at 4–5.) Although such actions may be routine in a commercial retail setting, these actions are also consistent with anticipating potential litigation. As a result, TJX should have known that video recordings from the date of Guess's fall may be relevant to future litigation.

TJX also failed to take reasonable steps to avoid the loss of these video recordings. Tabitha Bates, a district loss prevention manager for TJX, testified that she reviewed the surveillance recordings from the date of Guess's fall and that the recordings did not capture the fall. (Doc. 31-5, at 5–8.) She further testified that, had Guess's fall been captured by the video surveillance system, she would have saved it, but, since the fall was not captured by the recordings, videos from the date of Guess's fall were taped over after ninety days pursuant to company policy. (*Id.*) Although Bates testified that the video surveillance did not capture Guess's fall, that testimony has to be weighed against the store's general manager's testimony

there were surveillance cameras "covering everything." (Doc. 31-4, at 5.) Moreover, simply because a recording did not capture Guess's fall does not mean that the recordings did not capture information that could be relevant to the litigation, including conditions in the store at the time of the fall or how store employees reacted upon learning about Guess's fall. As a result, even if the Court credits Bates's testimony that video surveillance did not capture Guess's fall, it was unreasonable for TJX not to segregate and retain copies of the video surveillance recordings because it knew or should have known that these video recordings may be relevant to future litigation, especially considering that there nothing in the record suggesting the recordings can be restored or replaced through additional discovery.

TJX's failure to preserve the video recordings also prejudices Guess. Because TJX failed to preserve the videos, Guess will never have the benefit of knowing precisely what the videos showed or did not show. Bates may be telling the truth that the videos did not capture Guess's fall, but that does not mean that the videos did not contain relevant information. For example, the videos may have captured whether a hanger was on the floor immediately preceding Guess's fall or may have captured whether store employees found the hanger that Guess claims she slipped on after her fall. Stated another way, these recordings, at a minimum, would have objectively shown store conditions immediately before and immediately after Guess's fall— evidence that is certainly relevant to Guess's claim against TJX. Based on the foregoing, the Court finds that TJX's failure to preserve the video recordings merits sanctions under Rule 37(e)(1). Guess has not, however, demonstrated TJX's failure to preserve these video recordings

6
Case 4:24-cv-00030-TRM-MJD    Document 40    Filed 04/29/25    Page 6 of 8    PageID #: 323

was done with the intent to deprive her of using them in litigation. Accordingly, the Court will impose sanctions no greater than necessary to cure the prejudice.[1]

Given the evidentiary gap that results from TJX's failure to preserve the video recordings, the Court finds that denial of its motion for summary judgment is an appropriate sanction.[2] TJX has moved for summary judgment arguing, among other things, that there is nothing in the record showing that TJX employees had actual or constructive notice of a hanger on the ground of the store or that TJX employees caused the coat hanger to be on the ground. (*See generally* Docs. 26, 26-1.) Nonetheless, there is reason to believe that surveillance recordings from the date of Guess's fall would have captured evidence creating a genuine issue of material fact as to whether TJX employees had actual or constructive knowledge that there

---

[1] TJX has cited to *Parrish v. Dollar General Corporation*, 680 F. App'x 423 (6th Cir. 2017), to argue that spoliation sanctions are not appropriate because there is no duty to preserve the video recordings that did not capture Guess's fall. (Doc. 37, at 3–5.) The facts and applicable legal standard in *Parrish*, however, distinguish it from this case because the plaintiff in *Parrish* was seeking an adverse-inference jury instruction. To merit an adverse-inference instruction, the party seeking spoliation sanctions must demonstrate that evidence was destroyed with a culpable state of mind, *Parrish*, 680 F. App'x at 427, and, under Rule 37(e)(2), that means an "intent to deprive another party of the information's use in the litigation." Unlike the plaintiff in *Parrish*, Guess is not seeking an adverse-inference jury instruction or arguing that TJX recorded over the surveillance recordings with the intent to deprive Guess of their use in this litigation; rather, she is arguing that summary judgment is inappropriate based on TJX's failure to preserve the recordings. There is sufficient evidence to conclude that taping over the recordings after documenting an incident report and putting the company's insurance carrier on notice of the incident triggered TJX's duty to preserve the recordings and that its failure to do so was negligent. As a result, *Parrish* does not foreclose the Court from imposing spoliation sanctions no greater than necessary to cure the prejudice caused.

[2] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

was a hanger on the ground or creating a genuine issue of material fact as to whether a TJX employee caused a hanger to be on the ground. Neither the Court nor the parties, however, will ever know because TJX failed to preserve video recordings that may have contained relevant evidence. As a result, curing the resulting prejudice to Guess, at a minimum, requires the Court to deny TJX's motion for summary judgment.[3]

### III. CONCLUSION

For the reasons stated herein, TJX's motion for summary judgment (Doc. 26) is **DENIED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court will reserve ruling as to whether additional sanctions at trial are necessary to cure the prejudice caused by TJX's failure to preserve these videos, including whether it is appropriate for the parties to present evidence and argument to the jury regarding the loss of the video recordings.